**Kevin FLEMING, Plaintiff–Appellant,**

v.

**NEW YORK UNIVERSITY, Defendant–Appellee.**

No. 368, Docket 87–7954.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1988.

Decided Jan. 6, 1989.

Kipp Elliott Watson, New York City, for plaintiff-appellant.

Terrance J. Nolan, New York City (S. Andrew Schaffer, on the brief), for defendant-appellee.

Before VAN GRAAFEILAND and ALTIMARI, Circuit Judges, and MUKASEY, District Judge.*

MUKASEY, District Judge:

Appellant Kevin Fleming, a former student at New York University who is handicapped and must use a wheelchair, began this suit in 1985, alleging that the University had overcharged him for his dormitory room during his undergraduate and graduate years, and thus violated § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Supp. IV 1986). Appellant also sought a preliminary injunction requiring the University to issue him his Master of Arts diploma. The district court, in its June 24, 1986 decision, denied the preliminary injunction and granted summary judgment for the University, holding that appellant's claims based on his undergraduate years were time-barred by a three-year statute of limitations, and that he failed to state a claim as to his year of graduate study because he never applied for graduate housing but instead requested and received permission to remain in his undergraduate dormitory. On November 24, 1986, a panel of this Court summarily affirmed the denial of a preliminary injunction. Appellant then moved unsuccessfully to vacate the summary judgment pursuant

* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

to Fed.R.Civ.P. 60(b)(3), claiming that it was based on misrepresentation. We now affirm the district court's grant of summary judgment and its denial of appellant's motion to vacate.

## I.

Appellant attended the University as an undergraduate from September 1978 until June 1982. Because he has Frederick's Alaxia, a genetic disorder which results in the loss of muscular coordination, and thus must use a wheelchair, he requested single occupancy of a double room ("SOD" in the argot of the University's Housing Office). The University granted his request and altered the room to suit his needs.

From September 1978 until May 1979, Fleming was charged a single rate even though he lived alone in a double room. From September 1979 until June 1982, however, he was charged twice the prior rate because of a change in the University's housing policy. In order to maximize revenue, the University required all students residing alone in double rooms to pay double housing fees.

The New York State Office of Vocational Rehabilitation paid appellant's entire room costs until his final year of undergraduate education, when he had to pay part of his room costs.

In the summer of 1982, Fleming began graduate studies. A counselor in the University's Office of Disabled Student Services suggested he apply for graduate housing, but he asked to stay in his undergraduate residence. Although the University did not usually grant such requests, it made an exception in his case. The University continued to charge him the higher rate, however. In July 1982, Fleming sent a letter of complaint to the Office of Civil Rights of the United States Department of Education (hereafter "OCR") complaining that nonhandicapped undergraduates were allowed to live alone in double rooms at single rates while he was forced to pay a higher rate.

By June of 1983, when Fleming completed his graduate study, OCR had concluded its investigation of his complaint and detailed a proposed resolution in a June 23, 1983 letter to the University. (Defendant's Cross–Motion for Summary Judgment Exh. G) The University would agree to lower its room charges for appellant by 25 percent for his graduate year, halve the past bills for his summer 1982 housing, and "consider" reducing his spring 1982 housing bill by 25%. The University would charge future disabled students with SOD accommodations 75% of the total that would be paid by two students occupying the same room. The University also would agree to develop and submit for OCR's review and comment "a housing policy that provides for single occupancy housing for students who require such special housing accommodations." Finally, the University "assured OCR that an adequate number of rooms [in its new graduate student housing facilities], in all classifications (e.g. singles, doubles, suites etc.) will be made available for disabled students." Fleming at first agreed to this solution, but later changed his mind. This suit ensued. The University, for its part, counterclaimed for the amount due for his housing.

Subsequently, OCR, in a letter dated December 31, 1985, more than two and one-half years after administratively closing the complaint and three months after suit was filed, issued a final letter regarding appellant's administrative complaint. (Defendant's Cross–Motion for Summary Judgment, Exh. H) In an opaque opinion, OCR determined that appellant had not been discriminated against because he had requested and received SOD student housing, and thus his situation was not comparable to that of able-bodied students who, because of a low occupancy rate during the summer of 1982, had resided in double rooms without incurring extra charges. The letter found, however, that the University's policy of double billing disabled students for SOD's violated § 504. OCR concluded that the terms of the agreement first accepted and then rejected by appellant would suffice to bring the University into compliance with § 504.

Fleming moved in the district court for a preliminary injunction to force the University to issue immediately his Master of

Arts diploma, which the University had withheld until he paid his housing bills. The University moved for summary judgment. The district court denied the preliminary injunction and granted summary judgment for defendant. It found Fleming's assertion that he was overcharged as an undergraduate probably stated a claim, noting that OCR, in its 1985 letter to the University, had found that the University's housing policies discriminated against handicapped students. Nevertheless, it determined that this claim was barred by a three-year statute of limitations. As to the claim relating to his graduate housing, the court found appellant had requested special treatment when he asked to reside in an undergraduate residence, unlike other graduate students. Therefore, summary judgment was granted in favor of the University.

In June 1987, appellant moved under Rule 60(b)(3) to vacate the summary judgment, alleging that the University misrepresented certain facts in its affidavits. Appellant submitted a draft OCR report which demonstrated that the University had no graduate housing suitable for disabled students. Two affidavits from disabled graduate students also claimed that the University offered no such housing. This motion was denied on October 5, 1987.

Fleming sought to appeal the entire judgment. However, because the University's counterclaims remained, no final judgment was entered on the grant of summary relief to the University. Accordingly, Fleming appealed only the denial of the preliminary injunction. In a summary order, a panel of this Court affirmed.

Appellant then sought to appeal *in forma pauperis* the rest of his case. A panel of this Court denied this request on January 15, 1988, noting that the grant of summary judgment was not yet final. Thereafter, appellant moved to dismiss the University's counterclaims, with prejudice, for failure to prosecute. The University cross-moved for voluntary dismissal of its counterclaims, without prejudice. The district court denied appellant's motion and granted the University's motion. A panel of this Court then granted appellant leave to pursue the instant appeal *in forma pauperis.*

## II.

■ Appellant first seeks to overturn the grant of summary judgment. Appellant maintains that the court below incorrectly dismissed that portion of his § 504 claim relating to his undergraduate housing as barred by the three-year statute of limitations. As for the remainder of his claim based on his year of graduate housing, appellant asserts that the district court erred in the allocation of the burdens of proof and failed to apply the proper law.

Section 504 provides in relevant part that, "[n]o otherwise qualified individual with handicaps in the United States, ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. The court found that N.Y.Civ.Prac. Law § 214(2) (McKinney 1986) ("CPLR"), which sets a three-year limitations period for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute," was the most appropriate state statute of limitations for § 504 claims. Appellee in its brief asserts that appellant is contesting the finding that a three-year statute of limitations bars his action for his undergraduate housing bills. Although appellant's brief on the first appeal in this case advanced an argument that a six-year statute of limitations for implied contractual liabilities, CPLR § 213(2), should apply, his current brief makes no such argument. In any event, this argument was not made below and is therefore precluded here.[1]

---

1. We note, however, that two recent Supreme Court decisions cast serious doubt on whether CPLR § 214(2) provides the most appropriate limitations period under New York state law. In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Court held that suits brought under § 1983, 42 U.S.C. § 1983 (1982), ought to be governed by the limitations period provided by state statute for personal injury actions. In *Goodman v. Lukens Steel Co.,* 482

*See Grace Towers Tenant Ass'n v. Grace Housing Dev. Fund Co.,* 538 F.2d 491, 495 (2d Cir.1976).

The district court found that appellant's claim ended with his graduation and therefore was time-barred because the suit was filed more than three years later, on September 13, 1985. Appellant claims that, under a "continuing violations" theory, each bill constitutes a new discriminatory act, and points to a September 22, 1983 bill, which included a charge for $360.50 for the fall of 1980. That bill, however, merely listed then unpaid charges, payment of which was necessary for appellant to receive his M.A. diploma. The argument that such a bill reflects or constitutes a continuing violation proves far too much. Under this theory, the University's counterclaim in this action for money allegedly owed would itself amount to a "continuing violation." Rather, to allege a continuing violation, the complaint must allege a present and ongoing violation of the law. Mere notice of past overcharges cannot constitute such an ongoing violation. *Cf. United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571, 578 (1977) (insufficient to allege a present effect of past discrimination).

■ As to the portion of his § 504 claim relating to graduate housing, the district court found that appellant's request was unlike other disabled graduate students' housing requests because he asked for a double room in an undergraduate dormitory, even though accessible graduate housing was available. Appellant asserts that the district court shifted the burden to him in violation of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Essentially, appellant claims that, once he had made a prima facie showing of discrimination, the University had to adduce specific facts reflecting a non-discriminatory reason for acting, *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207, 218 (1981), a burden which he asserts the University failed to carry in its summary judgment affidavits.

This argument assumes, however, that the district judge found appellant had proved a prima facie case of discrimination. Yet, the district court found that there had been no showing of discriminatory denial of graduate housing to Fleming because he never applied for such housing. Inasmuch as § 504 deals with discrimination, the principles applicable to discrimination cases provide basic guidance. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 612 F.2d 644, 649 (2d Cir.1979). One requirement, which is fundamental to a prima facie showing of discrimination in all areas, from hiring, *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed. 2d 158 (1971), to zoning, *Huntington Branch, NAACP v. Town of Huntington, N.Y.,* 844 F.2d 926, 932–33 (2d Cir.), *aff'd per curiam,* ── U.S. ──, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988), to housing, *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1038 (2d Cir.1979), is that the plaintiff must actually have applied for the benefit or the position at issue in order to demonstrate a prima facie case. Here, the district court found that appellant never applied for graduate housing, but rather asked to remain in his undergraduate dormitory. The record fully supported this determination. An affidavit by Michele LeMoal, Assistant Vice–President for Student Affairs and

U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the Court extended *Wilson* to claims under § 1981, 42 U.S.C. § 1981 (1982), and specifically rejected an argument, similar to appellant's on his earlier appeal to this Court, that a six-year state statute of limitations for interference with contractual relationships was more appropriate. 107 S.Ct. at 2621. Whether this analysis should be extended beyond the Reconstruction Acts and laws forbidding racial discrimination to statutes like § 504 of the Rehabilitation Act of 1973, remains an open question. *Goodman,* however, in characterizing discrimination claims as a "fundamental injury to the individual rights of a person" and thus akin to personal injury actions, 107 S.Ct. at 2621, seems to suggest an affirmative answer. Of course, whether the most appropriate state statute of limitations would then be three years under CPLR § 214(5), *see Okure v. Owens,* 816 F.2d 45 (2d Cir.1987), *cert. granted,* ── U.S. ──, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988), or one year under CPLR § 215(3), *Okure,* 816 F.2d at 49 (Van Graafeiland, J., dissenting), appellant's claims for undergraduate housing overpayments still would be barred.

Services at the University, stated that "[the plaintiff] simply never sought, nor applied for such [graduate] housing despite the urging of University representatives and does not allege otherwise." (LeMoal Aff. at ¶ 7) Copies of his rooming request for 1982–1983 reveal that he specifically requested Weinstein Hall, an undergraduate dormitory. (Defendant's Cross–Motion for Summary Judgment, Exh. D at 1) Appellant's papers on the motion never contradicted those statements.

The district court's holding is, of course, premised on the assumption that accessible graduate housing was available. Appellant now argues that accessible graduate housing was not in fact available and that the district court erred in failing to require the University to demonstrate with greater particularity the availability of graduate student housing. Appellant misstates the respective burdens on a motion for summary judgment. Fed.R.Civ.P. 56(e) mandates that, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212–13 (1986) (quoting Fed.R. Civ.P. 56(e)). In its moving papers for summary judgment, the University offered an affidavit by LeMoal stating that graduate facilities offered accessible housing for disabled students. (LeMoal Aff. at ¶ 7) In stark contrast, appellant's papers on the motion never alleged that accessible graduate housing was nonexistent. Appellant neither submitted an affidavit in opposition, nor an affidavit from any person with knowledge of the facts. Instead, an affidavit from counsel was submitted. Although appellant offered an affidavit in connection with his application for a preliminary injunction, it made no allegations regarding the availability of graduate housing for disabled students. Appellant thus failed to meet its burden on the motion.

Indeed, the one piece of evidence that could possibly have raised a question whether accessible graduate housing was available was submitted by defendant. The OCR proposal of June 1983 could be read as implicitly questioning whether the University in fact had accessible graduate housing available, because, in it, the University promised to provide accessible rooms in new graduate dormitories. Without more, however, it was insufficient to ward off summary judgment as it was concerned with the accessibility of future graduate dormitories, not the present accessibility of currently operating ones. Accordingly, summary judgment was appropriate.

In its finding, the district court also relied on the 1985 OCR finding that appellant was not comparable to other students because, unlike them, he affirmatively requested SOD housing. That finding, however, cannot support the result below. Although the 1985 OCR letter is far from clear, it seems to be comparing appellant with able-bodied students who resided in double rooms in Weinstein Hall during the summer of 1982 without incurring double charges. As the letter relates, these students resided in double rooms only because the dormitory occupancy rate during the summer was low and they, unlike appellant, never requested double rooms. The broad proposition that appellant's *request* for single occupancy of a double room in his graduate year, as opposed to his *requirement* for such occupancy, could itself terminate the court's inquiry into whether the University's actions violated § 504 is incorrect. Accepting appellant's contention, as we must on this appeal, that his use of a wheelchair made it impossible for him to live in a single room or to have a roommate in his double room, appellant could argue that the University's SOD policy discriminates against handicapped persons and thus make out a claim for relief which would survive the summary judgment stage. However, as set forth above, his failure to supply any evidence alleging that the University's graduate housing was inaccessible precludes that argument.

Finally, appellant contends that the judge below erred when he failed to find that the University offered too narrow a choice of graduate housing for the disabled. Referring to regulations of the Department of Education, appellant asserts that the statute is not satisfied if some

housing is available for disabled graduate students at the same cost as housing for non-disabled students. Rather, the regulations require also that the housing "shall be available in sufficient quantity and variety so that the scope of handicapped students' choice of living accommodations is, as a whole, comparable to that of non-handicapped students." 34 C.F.R. § 104.45(a) (1987). Appellant argues that the University's showing failed to meet this "scope" requirement because it failed to list the range of housing choices available to disabled graduate students. This contention fails for the same reason as those above: namely, that appellant never furnished any evidence of inadequate graduate housing. Thus, there was no need to delve further into the University's policy of housing disabled graduate students.

### III.

Appellant also appeals the district court's refusal to grant his Rule 60(b)(3) motion to vacate its earlier decision granting summary judgment. A Rule 60(b)(3) decision may not be disturbed on appeal absent an abuse of discretion. *Montco, Inc. v. Barr* (In re Emergency Beacon Corp.), 666 F.2d 754, 750 (2d Cir.1981). There was no such abuse here.

Appellant claims that the University misrepresented [2] below the extent to which graduate dormitories were accessible to handicapped individuals. His proffered evidence consists of the draft of the OCR report and two affidavits of other disabled graduate students at the University. The draft report reveals that Fleming's room could not comfortably have fit an additional roommate, undermining one contention of the University that appellant could have had a roommate and thus escaped the double charge. The report further found that Mercer Hall, a law school dormitory and one of two graduate facilities the University claimed was accessible to disabled students (the other being Washington Square Village apartments), was not a comparable option for wheelchair-bound non-law graduate students, largely because rents there

are higher than in other graduate housing and no formal arrangement was in place to house non-law graduate students there after 1981–1982. Nevertheless, the report also demonstrates that one disabled student was housed there during 1982–1983.

The draft report also claims that another disabled graduate student was placed in an undergraduate dormitory the same academic year appellant was there. That student has since died. An appended University publication shows that Washington Square Village was not accessible for disabled students, contrary to the University's claim.

Two disabled former graduate students asserted in affirmations that the University placed them in Weinstein Hall because no graduate housing was accessible. However, both students attended the University from 1979 to 1981, at least a full year before the time when appellant alleges he was the victim of discriminatory conduct. Their affirmations are of doubtful probative value.

Finally, appellant submitted a letter from the University's general counsel to an OCR investigator dated April 20, 1983, apparently conceding that no formal arrangement was in place to house non-law graduate students in the law dormitories at Mercer after 1982. Again, however, this contradicts the OCR assertion that a non-law disabled student was housed in Mercer in 1982–1983.

The evidence Fleming submitted to support his Rule 60(b)(3) motion was thus something of a mixed bag, including some items of little probative value and others that might have given pause if submitted earlier in opposition to the summary judgment motion, as set forth below. However, a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits. *Mastini v. American Tel. & Telegraph Co.*, 369 F.2d 378, 379 (2d Cir.1966), *cert. denied*, 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967); *Nederlandsche Han-*

---

**2.** Appellant did not move under Fed.R.Civ.P. 60(b)(2) based on discovery of new evidence. The draft OCR report was apparently in his possession at the time of the summary judgment motion and thus cannot be considered new.

*del–Maatschappij, N.V. v. Jay Emm, Inc.,*
301 F.2d 114, 115 (2d Cir.1962). The University was not required on the summary judgment motion to come forward with information regarding the accessibility of graduate housing. Rather, it was plaintiff's obligation—which he failed to fulfill—to provide some evidence that graduate housing was inaccessible. Accordingly, the University's failure to provide evidence could not constitute fraud or misrepresentation.

Moreover, the new evidence does not undermine the district court's holding that appellant never applied for graduate housing, but rather sought a special dispensation. Thus, the OCR draft confirms the University's position and the district court's determination that appellant asked for undergraduate housing and did not apply for graduate housing. Specifically, the draft OCR report, upon which appellant relied so heavily in his motion to vacate the grant of summary judgment, found that,

> upon Fleming's graduation in the Spring of 1982, he was advised by a counselor in the University's Office of Disabled Students Services to contact the Dean's Office of the Graduate School of Arts and Sciences to arrange for graduate student housing. Mr. Fleming failed to contact the Dean's Office. Instead, he applied directly to the Undergraduate Student Housing Office and requested occupancy in his old SOD in Weinstein Hall.

(Draft report at 12) However, in an affidavit attached to the motion to vacate, appellant belatedly claimed that,

> [p]rior to requesting to stay at Room 231 at Weinstein for the Summer session, 1982, I approached the Dean of my graduate school about residing in graduate student housing. He and I discussed the possibility of residing in Washington Square Village apartments, but we did not pursue this avenue when it became apparent that none of the apartments in Washington Square Village were accessible. I do not recall his mentioning any other residence as a possibility.

(Fleming Aff. in Support of Motion for Vacatur at ¶ 8) Even construing this statement in the light most favorable to appellant, it contradicts flatly the findings of fact in the draft OCR letter that appellant also attached, not to mention the affidavit of Michele LeMoal and the documentary evidence of appellant's request to remain in an undergraduate room. Moreover, these assertions were made more than a year after the University forcefully argued, and the district court found, that appellant made no application for graduate housing; appellant's statement therefore must be treated with some suspicion. *Cf. Reisner v. General Motors Corp.,* 671 F.2d 91, 93 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982) (disregarding factual assertions, made after motion for summary judgment, which contradicted earlier statements). Standing alone, therefore, it is not sufficient to suggest that an application—formal or informal—ever was made for graduate student housing. *See Huntington,* 844 F.2d at 932–33 (finding prima facie showing of informal application to rezone property where housing group formally requested Town Board to amend zoning code to permit such development, and the Board, in a resolution rejecting this application, characterized it as an application to rezone the property).

For the foregoing reasons, the district court's decisions are affirmed in all respects.