Victor J. DEFAZIO, Jack Finkelstein, James Collins, and Henry Gebhard, Plaintiffs,

v.

Kevin WALLIS; Robert Aquino; Ryan P. Greenberg; Thomas Ryan; Bryan Zwolack; Jeffrey M. Roberts P.C.; Jeffrey M. Roberts; Capital Health Management, Inc.; Meridian Ambulance Group, LLC; Meridian Behavioral Sciences, LLP; Meridian Group Holdings, LLC; Meridian Behavioral Health Sciences, LLP; Meridian MSO, Inc.; Meridian MSO, LLC; Phoenix Transport Corp. d/b/a Emergency Ambulance Service; University Care Network, LLC; Defendants "John Does" and "Jane Roes" "1" through "15", The Names "John Doe" and "Jane Roe" Being Fictitious, The Identity of said Defendants not being Presently known to the Plaintiffs; and/or Others Presently Unknown to the Plaintiff, Jointly or Severally, Doing Business Under the Trade Styles, Capital Management, Med Transit, Meridian, Meridian Behavioral Health Services, Meridian Health Services, Phoenix Ambulance, Physicians Health Services, Presidential Emergency Medical Service; and University Health Plans, Defendants.

No. 05–CV–5712 (ADS)(ARL).

United States District Court, E.D. New York.

July 14, 2007.

Dinerstein & Lesser, P.C., Commack, NY (Robert J. Dinerstein, of counsel), for Movant.

The Law Firm of Joel Spivak, Great Neck, NY (Joel Spivak, of counsel), for Plaintiffs.

Law Offices of Edward Weissman, New York, NY (Edward Weissman, of counsel), for Defendants, Kevin Wallis and Ryan P. Greenberg.

Law Offices of Thomas F. Liotti, Garden City, NY (Thomas F. Liotti, of counsel), for Defendants, Robert J. Aquino and Capital Health Management, Inc.

Murray & McCann, Rockville Centre, NY (Joseph D. McCann, of counsel), for Defendant, Thomas Ryan.

Pezold, Smith, Hirschmann & Selvaggio, LLC, Huntington, NY (George C. Pezold, of counsel), for Defendant, Bryan Zwolack.

The Law Office of Bennett D. Krasner, Atlantic Beach, NY (Bennett D. Krasner, of counsel), for Defendant, Phoenix Transport Corp.

Jeffrey M. Roberts, P.C., Smithtown, NY (Jeffrey M. Roberts, of counsel), for Defendants, Jeffrey M. Roberts P.C. and Jeffrey M. Roberts.

NO APPEARANCE: The Defendants Meridian Ambulance Group, LLC, Meridian Behavioral Sciences, LLP, Meridian Group Holdings, LLC, Meridian Behavioral Health Sciences, LLP, Meridian MSO, Inc., Meridian MSO, LLC, and University Care Network, LLC.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On December 8, 2005, Victor DeFazio, Jack Finkelstein, James Collins, and Henry Gebhard (collectively, the "plaintiffs") commenced this action against the numerous defendants alleging, among other matters, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Presently there are four motions before the Court: (1) a motion by the plaintiffs' former counsel, Dinerstein & Lesser, P.C. and Robert Jay, Dinerstein, Esq., pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") for relief from the Court's October 17, 2006 Order disqualifying Dinerstein as counsel for the plaintiffs; (2) the defendant Robert J. Aquino's motion to dismiss the amended complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and for lack of subject matter

jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1); and (3) separate motions by (a) the defendant Thomas Ryan and (b) the defendants Kevin Wallis and Ryan Greenberg, both for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and 9(b). For the purpose of this motion Aquino, Ryan, Wallis, and Greenberg are referred to as "the moving defendants."

## I. AS TO DINERSTEIN'S RULE 60 MOTION

On October 17, 2006, ruling on objections to an order of United States Magistrate Judge Arlene R. Lindsay, this Court granted a motion by the defendant Kevin Wallis to disqualify Dinerstein as the plaintiffs' counsel, and directed the plaintiffs to retain new counsel. On November 29, 2006, Dinerstein first filed a Rule 60 motion. On December 9, 2006, the Court determined that the motion should not be considered because it violated several Local Rules for the Southern and Eastern Districts of New York and this Court's individual rules. Specifically, the motion did not include a memorandum of law, and the declaration submitted in support of the motion contained numerous footnotes and exceeded the Court's twenty-five page limit. The Court permitted Dinerstein to re-file his motion upon compliance with the Court individual rules and the local rules. He did so on December 14, 2006.

Dinerstein's present motion is based on Rule 60(b)(3), which provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fed. R.Civ.P. 60(b)(3). A party seeking relief pursuant to Rule 60(b)(3) must establish by clear and convincing evidence that the opposing party engaged in fraud or other misconduct. *See Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir.1989). Moreover, "[t]o prevail on a Rule 60(b)(3) motion, a movant 'must show that the conduct complained of prevented the moving party from fully and fairly presenting his case.'" *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir.2004).

Dinerstein raises five grounds for relief: (1) the defendant Wallis committed perjury; (2) there was no confidential disclosure; (3) the purported communications were false and therefore were not privileged; (4) Wallis failed to satisfy the high standard of proof in supporting his motion to disqualify Dinerstein; and (5) there was no substantial relationship between the services rendered by Dinerstein to Wallis and the issues at bar in the instant case. In the Court's opinion, grounds two through five are merely attempts by Dinerstein to re-litigate the motion for disqualification which was heard by Magistrate Judge Lindsay, and the parties objections to this Court, and will not be considered. *See Fleming*, 865 F.2d at 484 (Rule 60(b)(3) cannot be used to relitigate the merits of a previously determined motion); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) (same). Thus, only Dinerstein's allegations of fraud would be appropriate for consideration.

■ However, without regard to the substance of Dinerstein's arguments, the Court finds that Rule 60 is not a proper vehicle for him to seek relief from this Court's October 17, 2006 Order disqualifying him as counsel for the plaintiff. By its terms, Rule 60 applies to "a *final* judgment, order, or proceeding." Fed.R.Civ.P. 60(b) (emphasis added). While courts have recognized that the language of the rule leaves doubt about whether the word

"final" applies to the "order" and "proceeding" referenced in Rule 60, several cases have held that it does. *See Schwab v. Philip Morris USA, Inc.*, 449 F.Supp.2d 992, 1092 (E.D.N.Y.2006) (Rule 60 is not appropriate to challenge non-final order denying summary judgment); *Buck v. Libous*, No. 3:02 CV 1142, 2005 WL 2033491, *1 n. 2 (N.D.N.Y. Aug.17, 2005) (same with respect to an order denying summary judgment or granting partial summary judgment); *Cancel v. Mazzuca*, No. 01 Civ. 3129, 2002 WL 1891395, *3 (S.D.N.Y. Aug.15, 2002) (quotation omitted) (same with respect to order denying summary judgment to the plaintiff and granting partial summary judgment to the defendants). Rule 60 is inapplicable here if the Court's Order disqualifying Dinerstein as counsel for the plaintiff is not a final order.

The Court did not find cases discussing Rule 60 in connection with an order disqualifying counsel. However, the United States Supreme Court has stated that, for purposes of an appeal, an order disqualifying an attorney from a representation is not a final order. *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 430, 440, 105 S.Ct. 2757, 2761, 2766, 86 L.Ed.2d 340 (1985) (stating that "[a]n order disqualifying counsel in a civil case is not a final judgment on the merits of the litigation"; nor are orders disqualifying counsel in a civil case collateral orders subject to immediate appeal as "final orders"). In the Court's view, there is no significant reason to distinguish "finality" for purposes of appeal from finality for purposes of a Rule 60 motion. The order disqualifying Dinerstein is not "final," and therefore is not subject to attack under Rule 60. The proper procedure for Dinerstein would have been to make a motion for reconsideration pursuant to Local Rule 6.3, or to seek leave from the Court of Appeals to file an interlocutory appeal. Dinerstein did not pursue either procedure, and the time to do so passed before he made his Rule 60 motion.

In addition, on the merits, the Court finds that Dinerstein made no showing that the defendants' fraud prevented the plaintiffs from fully and fairly presenting their case against disqualification to the magistrate judge, or to this Court on appeal from Judge Lindsay's order. *See State Street Bank and Trust Co.*, 374 F.3d at 176. Accordingly, the Court denies Dinerstein's Rule 60 motion for relief from the Court's October 17, 2006 Order disqualifying him as counsel for the plaintiffs.

## II. THE DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

### A. Background

The facts in the amended complaint are taken to be true for the purpose of these motions. The individual defendants Wallis, Aquino, Greenberg, Ryan, and Zwolack are alleged to have held various positions as employees, agents, or owners of the various corporate defendants. The defendants Capital Health Management, Inc., Meridian Ambulance Group, LLC, Meridian Behavioral Sciences, LLP, Meridian Behavioral Health Sciences, LLP, Meridian MSO, Inc., Meridian MSO, LLC, University Care Network, LLC, Med Transit, Physicians Health Services, Presidential Emergency Medical Services, and University Health Plans are alleged to be affiliates of the parent entity Meridian Group Holdings, LLC (collectively, "MGH and the affiliates"). Roberts is an attorney who provided services for certain individual and corporate defendants. MGH and the affiliates were entities in the business of providing ambulance services in Nassau County. The Court derived very little additional detail, if any, about the parties from the amended complaint, which is

characterized by vague allegations such as the following: "Defendant Kevin Wallis, . . . has been a resident of the County of Nassau, maintaining a business relationship with at least some of the other Defendants, including Greenberg, Ryan, Aquino, Zwolack, Roberts, Phoenix and others, was an owner/partner/shareholder/director/ officer/chief executive officer/secretary/chairman of the board, of one or more of the Meridian companies and/or the affiliates and an owner of Capital." (Compl.¶ 7).

The plaintiffs allege that they were induced to invest in MGH and the affiliates through a series of misrepresentations by the individual defendants during the period between April/May 2001 through December 2002. According to the amended complaint, the individual defendants lied to the plaintiffs regarding their credentials and backgrounds; what the plaintiffs' would receive in return for their investments; the assets of MGH and the affiliates; the status and nature of deals and contracts supposedly existing for the benefit of the defendant companies; and the abilities of the companies to obtain licenses to provide ambulance services to particular locales. All of this was part a scheme which had as its purpose to defraud the plaintiffs with regard to their investments and loans. In total, the plaintiffs allege that they invested or loaned $192,500 to the defendants, which the defendants refused to repay.

The plaintiffs also allege that the defendants forged several of their signatures on an application for the line of credit with the North Fork Bank, misrepresenting on the application that these plaintiffs were officers and directors of the company applying for the loan. Later, there was a default on this loan. North Fork Bank sued the plaintiffs, and although it is not set forth whether North Fork Bank recovered from the plaintiffs, they are alleged to have incurred approximately $30,000 in legal fees defending that action (the "North Fork Action").

Presently before the Court are motions by the individual defendants Aquino, Ryan, Wallis, and Greenberg to dismiss the amended complaint. The defendant Phoenix Transport Corp. filed an answer to the amended complaint. From reviewing the docket, it appears that none of the other defendants have answered or otherwise moved with respect to the amended complaint.

### B. Legal Standards

#### 1. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim to relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1968, 1974, 167 L.Ed.2d 929 (2007). The issue to be determined remains merely whether the plaintiffs should be entitled to offer evidence to support their claims, and not whether they will ultimately be successful in this lawsuit. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

#### 2. Rule 12(c)

The standard for reviewing a motion for judgment on the pleadings under Fed. R.Civ.P. 12(c) is analogous to the rules pursuant to Rule 12(b)(6). *Patel v. Contemporary Classics of Beverly Hills*, 259

F.3d 123, 126 (2d Cir.2001). The Court must determine whether "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union United Plant Guard Workers of Am.,* 47 F.3d 14, 16 (2d Cir.1995). As with a 12(b)(6) motion to dismiss, the issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

### 3. Rule 9(b)

Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake [must] be stated with particularity." Fed.R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.' " *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 179 (2d Cir.2004) ("In addition to alleging the particular details of a fraud, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.") (quotation marks and citation omitted). As such, this requires the plaintiffs to identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed; to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme. *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (citations omitted).

### C. Civil Rico

Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964. To establish a RICO claim, a plaintiff must show: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 903–04 (2d Cir.1996) (citing *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir.1994)). Here, the plaintiffs assert three separate causes of action under RICO pursuant to 18 U.S.C. §§ 1962(a), (b), and (c).

### 1. As to the Predicate Acts of Mail and Wire Fraud

In order to state a violation under any provision of the RICO statute, the plaintiffs must allege a "pattern of racketeering activity." Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law including, among other things, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. To constitute a "pattern," the statute requires a plaintiff to plead at least two predicate acts of racketeering activity within a ten year period. *See* 18 U.S.C. § 1961(5). In this case, the plaintiffs allege predicate acts of wire fraud and mail fraud.

### a. Wire Fraud

■ The elements of wire fraud are (1) a scheme to defraud; and (2) communication by wire in "interstate or foreign commerce" to further that scheme. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 243 (2d Cir.1999). Purely intrastate communications are not sufficient under the statute. *Id.* (citations omitted).

■ In the present case, the plaintiffs and all of the defendants are residents of New York, and the plaintiffs do not allege that any wire communications occurred in interstate or foreign commerce. "Where all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated." *McCoy v. Goldberg,* 748 F.Supp. 146, 154 (S.D.N.Y.1990). Thus, lacking any allegation of interstate communication, the plaintiffs' wire fraud allegations are insufficient to serve as a predicate act under the RICO statute. *Id.; Mathon v. Feldstein,* 303 F.Supp.2d 317, 323–24 (E.D.N.Y. 2004) (Spatt, J.); *Bernstein v. Misk,* 948 F.Supp. 228, 239 (E.D.N.Y.1997); *Efron v. Embassy Suites (Puerto Rico), Inc.,* 47 F.Supp.2d 200, 205 (D.P.R.1999); *see also Utz v. Correa,* 631 F.Supp. 592, 596 (S.D.N.Y.1986) (a RICO predicate act of wire fraud "requires an interstate telephone call"). The plaintiffs' statement in their brief that Wallis resided and had a business in New Jersey at the time of the depositions in the North Fork Action is not appropriate for consideration because it did not appear in the amended complaint, *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint."), and in any event it does not allege an interstate communication. Accordingly, the plaintiffs may not rely on their allegations of wire fraud to support the element of a "pattern of racketeering activity."

### b. Mail Fraud

■ A complaint alleging mail fraud must show (1) the existence of a scheme to defraud; (2) the defendants' knowing and intentional participation in the scheme; and (3) the use of the mails in furtherance of the scheme. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 243 (2d Cir.1999); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996) (citation omitted). Allegations of mail fraud must be made with the particularity required by Fed. R.Civ.P. 9(b). In this regard, the Second Circuit has stated:

> In the RICO context, Rule 9(b) calls for the complaint to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)). The plaintiffs must also "identify the purpose of the mailing within the defendant's fraudulent scheme." *McLaughlin,* 962 F.2d at 191. In addition, the plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 812 (2d Cir. 1996).

*Moore v. PaineWebber, Inc.,* 189 F.3d 165, 173 (2d Cir.1999). However, this Court has recognized, as have others, that the mailings need not themselves contain fraudulent statements, if the plaintiff sufficiently alleges that the mails were used in furtherance of a scheme to defraud. *See, e.g., Wood v. Inc. Village of Patchogue,* 311 F.Supp.2d 344, 359 (E.D.N.Y.2004) (Spatt, J.) (quoting *In re Sumitomo Copper Litig.,* 995 F.Supp. 451, 456 (S.D.N.Y.1998)) (additional citations omitted). Where the plaintiff claims that the mailings were themselves fraudulent, "the complaint should

specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred." *In re Sumitomo Copper Litig.*, 995 F.Supp. at 456.

In the present case, the amended complaint alleges the following acts by which the mail was used:

62. The Defendants Wallis, Greenberg, Ryan, Zwolack, MGH and affiliates (K–1 Mail Fraud Defendants), used the mails to execute or attempt to defraud and/or execute the scheme artifice to defraud the Plaintiffs and, conceivably, others.

63. The use of the U.S. Mail may have been an incidental element of the scheme or artifice to defraud but contributed thereto.

64. The K–1 Mail Fraud Defendants issued K–1 forms to Plaintiffs Finkelstein, Collins and other investors.

65. The K–1 Mail Fraud Defendants used the U.S. Mail to transmit the K–1 forms to Plaintiffs Collins, Finkelstein and other investors.

66. By issuing the K–1 forms to Plaintiffs Collins and Finkelstein, the K–1 Mail Fraud Defendants represented that each of said Plaintiffs each had a beneficiary/proprietary interest in MGH and/or one of the Affiliates.

67. At no time have any Plaintiff held a beneficiary interest in MGH or in any of the Affiliates.

68. The K–1 Mail Fraud Defendants issued said notices to the plaintiffs and other investors in furtherance of their scheme and artifice to defraud the Plaintiffs.

69. Additionally, the issuance of the K–1 forms evidence a conscious and deliberate attempt by the K–1 Mail Fraud Defendants to create an illu-

sion which would bolster their contrived version of the events in issue.

(Compl. ¶¶ 62–69).

The alleged mail fraud also involved the defendants "Wallis, Greenberg, MGH and the affiliates or some of them" having applied for and obtaining a letter of credit from the North Fork Bank. On an unspecified date, it is alleged that the defendants forged the signatures of the plaintiffs DeFazio, Finkelstein, and Collins on an application for a line of credit. The plaintiffs allege that, on the application submitted to North Fork Bank, the defendants misrepresented that DeFazio, Finkelstein, and Collins were officers and directors of the "applicant" for the loan. Also, the plaintiffs allege further that Wallis deliberately refrained from signing the loan application, even though the document required him to do so as an owner of Meridian Group Holdings, LLC. (Compl. ¶¶ 70–86).

When payments on the loan lapsed, North Fork Bank commenced an action in the Supreme Court of the State of New York, County of Suffolk against the plaintiffs Defazio, Collins, and Finkelstein, the defendants Meridian Group Holdings, LLC and Ryan P. Greenberg, and an individual not named as a party in this lawsuit. (Compl. ¶¶ 87–91).

The allegations of mail fraud relating to the North Fork Action consist of the following:

93. MGH and Greenberg, and those acting on their behalf, as well as Wallis, and those acting on Wallis' behalf, have used the U.S. Mails in their defense and/or for communications relating to the [North Fork] Action

94. In asserting their defense to the Action, MGH and Greenberg, or those acting on their behalf, used

the U.S. Mails to transmit documents which they knew, or reasonably should have known, were wrongful, fraudulent and/or illegal.

95. DeFazio, Finkelstein and Collins each deny that they ever signed the application for the [North Fork line of credit] as guarantors or otherwise.

96. The Defendants MGH and the affiliates, Wallis and Greenberg, and/or those acting on their behalf, used the U.S. Mails to assert a counterclaim in the [North Fork] Action as against the Plaintiffs.

(Compl.¶¶ 93–96).

The moving defendants allege that these mail fraud allegations do not comply with the specificity required by Rule 9(b). The Court agrees. With regard to the K–1 forms, the plaintiffs alleges that these documents were fraudulent. (Compl.¶ 66). Thus, the circumstances of this fraud should be stated with specificity. However, the plaintiffs do not explain what the K–1 forms are; what information they contained; when the documents were mailed; or who sent them. In a memorandum of law, the plaintiffs claim that they received these forms, described as "IRS forms," during the period between "April/May 2001–December 2002," and asks the Court to "assume" that the postal service delivers the forms to the homes or businesses of the individuals noted on the forms. The Court will not consider these additional facts, which were not in the amended complaint. *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint."). In any event, an allegation by the plaintiffs that they received the K–1 forms sometime between April/May 2001 and December 2002 would fall short of satisfying the requirement of Rule 9(b).

The plaintiffs' allegations regarding the document filed in the North Fork Action are also insufficient to satisfy RICO's predicate act requirement. First, the crime of forgery, as alleged by the plaintiffs, is not among the activities listed in Section 1962 as constituting "racketeering activity." *See* 18 U.S.C. § 1961(1); *see also Thypin Steel Co. v. Certain Bills of Lading Issued for Cargo of 3017 Metric Tons, More or Less, of Hot Rolled Steel Plate Laden on Board M/V Geroi Panfilovsky,* No. 96 CIV. 2166(RPP), 1998 WL 912100, at *6 (S.D.N.Y. Dec.30, 1998) (noting that the crime of forgery is not in the definition of predicate acts contained in 18 U.S.C. § 1961(1)).

Second, with respect to the defense of the North Fork Action and the assertion of a counterclaim, several courts have held "that the legitimate acts of an attorney on behalf of clients cannot form the basis of a RICO claim." *Morin v. Trupin,* 711 F.Supp. 97, 105 (S.D.N.Y.1989) (citations omitted); *see also Gunn v. Palmieri,* 1989 WL 119519, at *1 (E.D.N.Y. Sept.29, 1989) (Platt, J.) ("[The] plaintiffs' second predicate act, obstruction of justice, while one of the predicate acts set forth in the RICO statute as pled here is ridiculous. If serving and filing an answer or a motion by any defendant in a federal action could be considered obstruction of justice, this Court would be flooded with motions to amend complaints by plaintiffs seeking to add RICO claims based upon mail fraud and obstruction of justice as soon as an answer was served. Such an interpretation of the RICO statute is untenable.").

Third, the plaintiffs do not specify what documents the defendants submitted, when they were mailed and by whom, or

what the documents said. In sum, the Court finds that the first amended complaint fails to allege the circumstances of the alleged mail fraud with the level of specificity required by Rule 9(b). The Court also finds that the plaintiffs' claims of wire fraud are insufficient as a matter of law because they do not allege that any interstate communications occurred.

Because these wire and mail fraud claims fail, the amended complaint does not allege a pattern of racketeering activity. Accordingly, the moving defendants' motions to dismiss the plaintiffs' RICO causes of action are granted. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993) ("[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."); *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F.Supp.2d 193, 211–12 (E.D.N.Y.2006) (dismissing RICO claims where, among other things, the plaintiffs failed to state the content of the allegedly fraudulent mailings or when they were received); *Lesavoy v. Lane*, 304 F.Supp.2d 520, 532 (S.D.N.Y.2004) ("Parroting statutory language while generally referring the reader back to the previous one-hundred paragraphs in a complaint is inadequate."), *aff'd in part, vacated in part on other grounds*, 170 Fed.Appx. 721 (2d Cir. 2006); *Sony Music Entmt. Inc. v. Robison*, No. 01 CIV. 6415(LMM), 2002 WL 272406, at *5 (S.D.N.Y. Feb.26, 2002) (dismissing RICO counter-claims because the defendants failed to specify the specific dates and details of the fraudulent communications, the people involved, and why the acts constituted fraud); *cf. Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir.1999) (the plaintiff provided "a chart listing twelve different mailings said to contain fraudulent representations, along with the dates of these mailings and cross-references to the paragraphs of the complaint in which the mailings are further discussed," and "the persons responsible for the allegedly fraudulent statements [we]re identified, and the chart lists dates and specific documents.").

Finally, even if the Court found that the allegations of mail fraud were sufficient despite their lack of particularity, the plaintiffs do not sufficiently allege how these mailings were used to further the defendants larger scheme to defraud. The plaintiff does not describe what the K–1 forms are, what the effect of mailing these documents to the plaintiffs was, or how they fit into the defendants' alleged scheme other than to "evidence a conscious and deliberate attempt ... to create an illusion which would bolster their contrived version of the events in issue." (Compl.¶ 69). In short, there has been no connection of the K–1 forms to the alleged fraud. *Compare Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799, at *6 (S.D.N.Y. 2003) (finding fraud claims sufficient, where the complaint "clearly explain[ed] the relationship between the mailings or wire communications and the scheme to defraud."). Similarly, the plaintiffs do not set forth how some of the defendants' assertion of a defense and counterclaim in another lawsuit furthered their ability to entice the plaintiffs into sham investments.

### 2. Other Deficiencies in the Amended Complaint

The Court has determined that the plaintiffs failed to state a claim for a RICO violation because the plaintiff did not sufficiently allege a pattern of racketeering activity. The RICO causes of action against the moving defendants in the amended complaint will be dismissed for that reason. However, in reviewing the amended complaint and the motions to dismiss and for judgment on the pleadings, the Court has identified other deficiencies in the plaintiffs' allegations that would in-

dependently support dismissing the RICO claims.

### a. As to Investment of Racketeering Income in Violation of § 1962(a)

In order to plead a violation of subsection (a) of the RICO statute, the plaintiff must allege that each defendant "has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, . . . in acquisition of any interest in, or the establishment or operation of, any enterprise." 18 U.S.C. § 1962(a). The "enterprise" in subsection (a) refers not to the "racketeering enterprise," but contemplates investment in some other, legitimate business. *USA Certified Merchants, LLC v. Koebel,* 262 F.Supp.2d 319, 331 (S.D.N.Y.2003) (citations omitted); *Kaczmarek v. Inter. Bus. Machs. Corp.,* 30 F.Supp.2d 626, 628 (S.D.N.Y.1998).

■ The plaintiffs' first cause of action alleges a violation of Section 1962(a) of the RICO statute against the defendants MGH and its affiliates, Wallis, and Greenberg. This claim is based on the allegations relating to the North Fork Bank Line of Credit. The only allegation in the amended complaint with regard to the investment of racketeering income appears in paragraph 116, which states that the "Count I Defendants used and invested income that was derived from a pattern of racketeering activity in one or more interstate enterprises." This statement is conclusory, does not identify a entity that the defendants invested racketeering income in that is separate from the "racketeering enterprise," and is insufficient to state a claim under Section 1962(a).

### b. As to Acquisition or Maintenance of Control in a RICO Enterprise in Violation of § 1962(b)

The second count in the amended complaint alleges a cause of action pursuant to Section 1962(b) of the RICO statute. Section 1962(b) states that "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). The purpose of Section 1962(b) is "to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." *Mark v. J.I. Racing, Inc., et al.,* No. 01 Civ. 10821, 1997 WL 403179, at * 3 (E.D.N.Y.1997) (citation omitted); *see also Lugosch v. Congel,* 443 F.Supp.2d 254, 271 (N.D.N.Y.2006) (citation omitted) ("Essentially, section 1962(b) prohibits the takeover of legitimate businesses through racketeering activity.").

■ To state a claim under Section 1962(b), the plaintiff must allege that: (1) the purpose of the defendants racketeering activity was to acquire an interest or to maintain control of the enterprise; (2) that the defendants in fact acquired an interest or maintained control of the enterprise through their pattern of racketeering activity; and (3) that the plaintiff suffered injury as a result of the acquisition of the enterprise. *See Black Radio Network, Inc. v. NYNEX Corp.,* 44 F.Supp.2d 565, 579 (S.D.N.Y.1999); *O & G Carriers v. Smith,* 799 F.Supp. 1528, 1543 (S.D.N.Y. 1992).

■ The "acquisition or maintenance injury" must be separate and apart from the injury suffered as a result of the predicate acts of racketeering. *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 657 (S.D.N.Y.1996) (citing *Official Publications v. Kable News Co.,* 775 F.Supp. 631, 635 (S.D.N.Y.1991)). "Without a distinct

'acquisition injury,' [a plaintiff] cannot state a cause of action under subsection 1962(b)." *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1062–63 (2d Cir.1996), *vacated on other grounds,* 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Redtail Leasing, Inc. v. Bellezza,* No. 95 Civ. 5191, 1997 WL 603496, at *3 (S.D.N.Y. Sept.30, 1997) (the injury must be caused by "acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or the commission of predicate acts."); *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,* No. 01 Civ. 10821, 2004 WL 324477, at *12 (S.D.N.Y. Feb.6, 2004) ("Failure to allege [a distinct acquisition injury] results in dismissal.").

██ Here, the plaintiffs failed to state a claim under Section 1962(b). First, a claim under Section 1962(b) cannot be founded on accusations that the defendant "acquired or maintained" an interest in the same corporate entity comprising the RICO "enterprise." The term "enterprise" under this section contemplates that the defendants' racketeering activity will enable them to acquire or maintain an interest in some legitimate company, other than the organization through which they conducted their racketeering activity. *See USA Certified Merchants* 262 F.Supp.2d at 331 (citations omitted). There are no allegations that the defendants acquired an interest in a legitimate company other than MGH and its affiliates, which is the organization through which the defendants are alleged to have conducted their racketeering activity.

In addition, there are no allegations that the defendants' motivation for carrying out their alleged racketeering activity was to acquire an otherwise legitimate business or that the plaintiffs suffered injury that is distinct from the financial injury caused by the alleged predicate acts of wire and mail fraud. According to the amended complaint, the purpose of the alleged racketeering activity was financial gain, to be acquired by inducing the plaintiffs to invest by lying to them about the nature and purpose of the investments. Thus, the plaintiff failed to state a claim under Section 1962(b).

### c. The Plaintiffs Fail to Allege a Distinct Enterprise under Section 1962(c)

██ The plaintiffs' third and final RICO cause of action is based on Section 1962(c). Under Section 1962(c) the alleged "enterprise" through which a pattern of racketeering activity is conducted must be distinct from those persons who stand accused of conducting that racketeering activity. In other words, the same entity can not appear as both the RICO "enterprise" and a defendant in the same action. *Anatian v. Coutts Bank,* 193 F.3d 85, 88–89 (2d Cir.1999) (citing *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985)); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344–45 (2d Cir.1994); *In re Parmalat Secs. Litig.,* 479 F.Supp.2d 332, 346–47 (S.D.N.Y.2007). "[T]his distinctiveness requirement may not be circumvented by alleging a conspiracy between the defendant [corporation] and its own employees or agents carrying on the regular affairs of the defendant." *China Trust Bank of New York v. Standard Chartered Bank, PLC,* 981 F.Supp. 282, 286 (S.D.N.Y.1997) (citing *Riverwoods,* 30 F.3d at 344).

In the amended complaint, the plaintiffs identify the enterprise as "MGH and the affiliates together with Defendants Phoenix, Wallis, Aquino, Greenberg, Ryan, Zwolack and Roberts and the entities operating under various trade styles." (Compl.¶ 30). "The prime operators and agents in the Enterprise were Defendants

Wallis, Aquino, Greenberg, and Ryan, utilizing MGH and/or the affiliates." (Compl.¶ 31). Wallis is alleged to be "an owner/partner/shareholder/director/officer/chief executive officer/secretary/chairman of the board, of one or more of the Meridian companies and/or the affiliates and an owner of Capital." (Compl.¶ 7). Aquino is alleged to be "an owner/partner/shareholder/medical director/managing director in one or more of the Meridian companies and/or the affiliates, and an owner/shareholder and director of Capital." (Compl.¶ 8). Ryan is alleged to be "bookkeeper/chief financial officer/ president of one or more of the Meridian companies and/or the affiliates." (Compl.¶ 9). Greenberg is alleged to be "president/vice president/executive/director/partner/ owner/shareholder/officer in one or more of the Meridian companies and/or the affiliates." (Compl.¶ 10).

Wallis, Aquino, Ryan, and Greenberg are each alleged to have engaged in the RICO scheme "utilizing MGH and/or the affiliates and Phoenix to defraud the Plaintiff" "based upon the positions they held in MGH and the affiliates." The "Count III Defendants [are] MGH and the affiliates, Capital, Wallis, Aquino, Greenberg, Ryan, Zwolack, Roberts, Phoenix." (Compl.¶ 125).

██ Under Count III in the amended complaint, the defendants, the enterprise, and the persons engaging in the pattern of racketeering activity are the same. This fails to satisfy the distinctiveness requirement discussed above. "[T]he alleged racketeering enterprise [must] be distinct from the persons who participate in it." *Bernstein,* 948 F.Supp. at 235 (citing *Riverwoods,* 30 F.3d at 344); *see also Protter v. Nathan's Famous Systems, Inc.,* 925 F.Supp. 947, 956 (E.D.N.Y.1996) (Spatt, J.) (dismissing Section 1962(c) claim where the plaintiff alleged that the employees of the defendant corporation allegedly associated together in the course of their employment and on behalf of the corporation. Under such circumstances, the defendant employees and the defendant corporation did not form an enterprise separate and distinct from the corporation.). Thus, the plaintiffs also failed to state a claim under Section 1962(c).

## D. Supplemental Jurisdiction

All of the moving defendants argue that, because the plaintiffs' RICO claims are the only basis for Federal subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction."); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990) ("[I]t is well settled that 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well.' ") (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

However, none of the moving defendants take into account the other defendants who did not move to dismiss the plaintiffs' RICO causes of action. Specifically, in addition to the moving defendants, the plaintiffs allege RICO violations by MGH and the affiliates (counts I, II, and III), Capital Health Management, Inc. (count II), Zwolack (count III), Roberts (count III), and Phoenix (count III). None of these other defendants have made a motion to dismiss the complaint. Because the Court retains original jurisdiction over the RICO causes of action against the non-moving defendants, the Court declines to dismiss the plaintiffs' state law claims

against Aquino, Ryan, Wallis, and Greenberg.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Dinerstein's motion for Rule 60 relief is denied; and it is further

**ORDERED,** that Aquino's motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim is granted in part; and it is further

**ORDERED,** that Ryan's motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings is granted in part; and it is further

**ORDERED,** that Wallis and Greenberg's motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings is granted in part; and it is further

**ORDERED,** that the plaintiff's federal RICO claims against the defendants Aquino, Ryan, Wallis, and Greenberg are dismissed; and it is further

**ORDERED,** that the moving defendants' motions to dismiss the plaintiffs' state law claims against them for lack of supplemental jurisdiction are denied.

**SO ORDERED.**