Geoffrey RICE and Ophelia
Rice, Plaintiffs,

v.

The CITY OF NEW YORK; The New York City Police Department; NYPD Lt. David Goldstein; NYPD Officer Darrell Shannon; NYPD Officer Glenda Holloman; NYPD Officer Christos Drakakis; Willoughby Court Apartments L.P.; Shinda Management Cor-

poration; Vanessa Peterson; Kenneth P. Mintz; Jesse R. Baker; Neil D. Sonnenfeldt; Gutman, Mintz, Baker & Sonnenfeldt, LLP; Gutman, Mintz, Baker & Sonnenfeldt, P.C.; and Moses Ginsberg, Defendants.

15–CV–3928 (WFK) (MDG)

United States District Court,
E.D. New York.

Signed 07/26/2017

Philip Jay Dinhofer, Philip J. Dinhofer, LLC, Rockville Centre, NY, for Plaintiff.

Melanie Mary Speight, New York City Law Department, New York, NY, Evan Edward Richards, Law Offices Baker Greenspan & Bernstein, Robert L. Bernstein, Jr., Baker Greenspan & Bernstein, Esqs., Bellmore, NY, Greg Mann, Jacqueline K. Siegel, Kenneth Adam Novikoff, Rivkin Radler, LLP, Uniondale, NY, for Defendants.

The City of New York Police Department, pro se.

John Doe Goldstein, pro se.

Shannon Richard Doe, pro se.

**DECISION & ORDER**

WILLIAM F. KUNTZ, II, United States District Judge:

Geoffrey and Ophelia Rice ("Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 [1] and New York law against the City of New York; the New York City Police Department ("NYPD"); NYPD Officers David Goldstein, Darrell Shannon, Glenda Holloman, and Christos Drakakis; Vanessa Peterson; Willoughby Court Apartments L.P. ("WCA"); Shinda Management Corporation ("SMC"); Kenneth P. Mintz; Jesse R. Baker; Neil D. Sonnenfeldt; Moses Ginsberg; Gutman, Mintz, Baker & Sonnenfeldt, LLP; and Gutman, Mintz, Baker & Sonnenfeldt, P.C. (collectively, "Defendants"). Plaintiffs assert claims of (1) unlawful arrest, unlawful search, and excessive force, as well as deprivations of their property without due process of law and their right to the equal protection of the laws, in violation of the Fourth, Sixth, and Fourteenth Amendments to the U.S. Constitution; (2) negligence under New York law; (3) unlawful discriminatory practices, in violation of the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq.; (4) unlawful discriminatory practices, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 et seq.; (5) assault under New York law; (6) false arrest under New York law; (7–8) loss of services under New

York law, derivatively by Mrs. and Mr. Rice, respectively; and (9) attorney misconduct, in violation of section 487 of the New York Judiciary Law, and seek compensatory and punitive damages totaling $822,000,000.00, as well as interest, costs, and attorneys' fees. These claims arise from events surrounding Plaintiffs' landlords' entry into Plaintiffs' apartment pursuant to a New York City Housing Court ("Housing Court") order, and assisted by NYPD officers, to perform maintenance against Plaintiffs' wishes. Kenneth P. Mintz; Jesse R. Baker; Neil D. Sonnenfeldt; Moses Ginsberg; Gutman, Mintz, Baker & Sonnenfeldt, LLP; and Gutman, Mintz, Baker & Sonnenfeldt, P.C. (together, the "Gutman Defendants") now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Specifically, they seek to dismiss Plaintiffs' § 1983 claim against them with prejudice and to dismiss Plaintiffs' state law claims against them without prejudice. For the reasons that follow, the Gutman Defendants' motion is GRANTED.

**BACKGROUND [2]**

This action arises primarily out of a dispute between Plaintiffs, their landlords (WCA and SMC), and their building managing agent (Ms. Peterson), concerning attempts by WCA, SMC, and Ms. Peterson (together, the "Willoughby Defendants") to gain access to Plaintiffs' apartment for the purpose of performing heating, ventilation, and air conditioning ("HVAC") work therein. See Am. Compl. ¶¶ 8, 10–11, 13, 20. Rel-

---

1. Although the Amended Complaint also references 42 U.S.C. § 1985, see Am. Compl. ¶ 1, ECF No. 21, Plaintiffs assert that this was merely a "copying error" and that they do not seek to bring any claims under that provision. Accordingly, the Court considers only potential claims under § 1983.

2. The facts that form the basis of this Decision are drawn from the Amended Complaint. See ECF No. 21. For the purpose of resolving the instant motion, the Court assumes all well-pleaded facts to be true, drawing all reasonable inferences in favor of Plaintiffs. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

evant here, it also concerns certain actions of the Gutman Defendants, who were engaged by the Willoughby Defendants to obtain a Housing Court order permitting them entry into Plaintiffs' apartment and to represent them in a lawsuit against Plaintiffs. *See id.* ¶¶ 13a–o, 20–21.

■ On April 1, 2014, the Willoughby Defendants, through the Gutman Defendants, filed an order to show cause and a verified petition in Housing Court seeking a preliminary injunction permitting them access to Plaintiffs' apartment for the purpose of performing the above-mentioned HVAC work. *See id.* ¶ 20. According to the Amended Complaint, the proposed order also contained a provision for a temporary restraining order granting the Willoughby Defendants "more immediate" access to Plaintiffs' apartment, but it did not include a formal application for such an order or supporting documentation.[3] *See id.* ¶¶ 21–22. Nevertheless, on April 2, 2014, the Housing Court judge signed the proposed order as presented, including the temporary restraining order, without conducting a hearing.[4] *See id.* ¶ 22.

On April 4, 2014, Ms. Peterson arrived at Plaintiffs' apartment, accompanied by HVAC construction workers and NYPD Officers Goldstein, Shannon, Holloman, and Drakakis. *See id.* ¶¶ 23–25. According to the Amended Complaint, Ms. Peterson

had summoned the officers at the instruction of the Gutman Defendants; Plaintiffs do not allege, however, that the Gutman Defendants were present at the apartment that day or include any details of conversations between the Gutman Defendants and any other of the Defendants. *See id.* ¶ 25. After producing a copy of the Housing Court's order to show cause, the police officers and HVAC workers then "forcibly" entered the apartment against Plaintiffs' wishes. *See id.* ¶¶ 26, 29. Once inside, the police officers allegedly committed various constitutional violations and state law torts, including unlawful arrest, unlawful seizure, and excessive force. *See id.* ¶¶ 26–39, 41.

Plaintiffs filed their initial Complaint on July 6, 2015, *see* ECF No. 1, and an Amended Complaint on December 24, 2015, *see* ECF No. 21. On August 5, 2016, the Gutman Defendants filed a fully briefed Motion for Judgment on the Pleadings. *See* Def. Br., ECF No. 42–1; Pl. Resp., ECF No. 42–4; Def. Reply, ECF No. 42–6.

## APPLICABLE LEGAL STANDARD

■ Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A

---

**3.** Plaintiffs allege these omissions violated section 6301 of the New York Civil Practice Law and Rules and title 22, section 202.7(f) of the Compilation of Codes, Rules & Regulations of the State of New York, but this Court is not required to accept such legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Moreover, "a violation of state law is not cognizable under § 1983," *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985), and Plaintiffs have not asserted these alleged violations as separate state law claims. Accordingly, it is unnecessary for this Court to determine whether any of the Defendants violated

the above-referenced state rules and regulations.

**4.** As discussed in greater detail below, the Amended Complaint does not allege that the Housing Court judge acted with the goal of depriving Plaintiffs of their constitutional rights or pursuant to a conspiracy with the Gutman Defendants in signing the defective order or failing to conduct a hearing, nor does it include the Housing Court judge as a defendant in this action. Indeed, the reasonable inference to be drawn is that the Housing Court's error, if any, was merely unintentional.

motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Thus, the Court must accept all of the non-movant's factual allegations as true and draw all reasonable inferences in the non-movant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (internal quotation marks omitted).

▆ To survive a motion for judgment on the pleadings, a party must plead sufficient factual allegations "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. As such, the Complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Dargahi v. Honda Lease Trust*, 370 Fed. Appx. 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995)).

▆ "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). The Court may also review any document incorporated by reference in one of the pleadings, *see Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004), or any document not specifically incorporated by reference but on which the Complaint relies and which is integral to it, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## DISCUSSION

### I. Section 1983 Claims

The Gutman Defendants argue that Plaintiffs' § 1983 claims should be dismissed as against them because they are private parties and Plaintiffs have failed adequately to plead either state action or a § 1983 conspiracy claim. The Court agrees.

▆ Under § 1983, "constitutional torts are only actionable against state actors or private parties acting 'under color' of state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). By virtue of this requirement, "§ 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Accordingly, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *cf. United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295–96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct

constitutes 'state action.' "). For the purposes of § 1983,

> the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)).

■ Plaintiffs here do not suggest that they meet the compulsion or public function tests. Instead, Plaintiffs contend that they satisfy the joint action test and that their "complaint alleges conspiracy amongst the defendants." Although "[a] Section 1983 conspiracy claim is distinct from one of joint action," *Betts*, 751 F.3d at 84 n.1 (citing *Ciambriello*, 292 F.3d at 324–25), "[t]he concepts of acting 'jointly' or in 'conspiracy with' state actors are intertwined," *Stewart v. Victoria's Secret Stores, LLC*, 851 F.Supp.2d 442, 445 (E.D.N.Y. 2012) (Wexler, J.). "Even if considered as conceptually separate theories, both require the pleading of facts sufficient to show something more than conclusory allegations." *Stewart*, 851 F.Supp.2d at 445. Because Plaintiffs do not make clear whether they assert a joint action theory or a § 1983 conspiracy claim, the Court addresses each argument in turn.

**A. Joint Action**

■ "A private actor can only be 'a willful participant in joint activity with the State or its agents' if the two *share some common goal* to violate the plaintiff's rights." *Betts*, 751 F.3d at 85 (emphasis added) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). In addition, "a claim against a private entity must 'allege facts demonstrating that the private entity *acted in concert* with the state actor to commit an unconstitutional act.' " *Id.* at 84 (emphasis added) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). As with most claims, however, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324 (citing *Spear*, 954 F.2d at 68).

■ Relevant here, it is well settled that a private entity's "provision of background information to a police officer does not by itself make [that entity] a joint participant in state action under Section 1983." *Ginsberg*, 189 F.3d at 272; *see also Adebiyi v. City of New York*, 13–CV–0480, 2014 WL 4922888, at *4 (E.D.N.Y. Sept. 30, 2014) (Kuntz, J.) (collecting cases supporting same proposition); *Vazquez v. Combs*, 04–CV–4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) (Lynch, J.) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation"). Rather, "[a] private party supplying information or seeking police assistance does not become a state actor ... unless the police officers were improperly influenced or controlled by the private party." *Adebiyi*, 2014 WL 4922888, at *4 (quoting *Stewart*, 851 F.Supp.2d at 446). Similarly, "[t]he fact that a private entity uses the state courts

does not transform the private party into a state actor." *Graham v. Select Portfolio Servicing, Inc.*, 156 F.Supp.3d 491, 516 (S.D.N.Y. 2016) (Koeltl, J.); *cf. Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (noting that the Supreme Court "has never held that a State's mere acquiescence in a private action converts that action into that of the State"). In sum, "Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who *act* under color of law." *Ginsberg*, 189 F.3d at 273 (emphasis added) (finding no state action where a car rental company employee did not ask a police officer to cease attempting to induce a customer to pay for a rental, because there was no evidence of a plan, prearrangement, or conspiracy between the employee and the officer).

 Here, even read liberally, the Amended Complaint does not set forth any facts to suggest the Gutman Defendants shared a common goal to violate Plaintiffs' rights or acted in concert with the Housing Court judge, police officers, or any other state actor. At most, it alleges that: (1) the Gutman Defendants filed an order to show cause in Housing Court "for purposes of inappropriately, wrongfully and unlawfully importuning said Court to act thereon by its signing," Am. Compl. ¶¶ 20–21; (2) the Housing Court judge signed the order "as tendered by the ... defendants, inclusive of its temporary restraining order, without

conducting any kind of hearing ... and without the supporting documentation," *id.* ¶ 22; (3) the Willoughby Defendants, "at the instruction of or by the acts of the [Gutman Defendants],... contacted, called, summoned, importuned or otherwise caused [the police] to be present at, near, in or about [Plaintiffs' apartment] for purposes of enforcing the said temporary restraining order and/or to facilitate and/or cause the unlawful and/or forced entry therein by themselfs [sic] and/or by" the HVAC workers, *id.* ¶ 25; and (4) the Gutman Defendants "did conspire to cause and permit and did actually cause and permit the false arrest, wrongful detention, assault, wrongful entry, constructive eviction and the unlawful seizure of the person and property of the plaintiffs," *id.* ¶ 26. Critically, there is no suggestion that either the Gutman or Willoughby Defendants had any understanding with or exerted any improper influence over any state actor, and the Court "cannot speculate" as to whether any such discussions occurred or what they contained. *Adebiyi*, 2014 WL 4922888, at *4. Merely filing a document in court, even if procedurally improper, or calling the police, even for an improper purpose, does not create private liability under § 1983. Without more, Plaintiffs' allegations are insufficient to show joint action.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), on which Plaintiffs rely almost exclusively,[5] is not to the contrary. There, a

---

5. Plaintiffs also quote the relevant standard from *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), but they do not further analyze or draw comparisons to that case, even though it offers an example of the sort of allegations necessary to sustain a § 1983 conspiracy claim, *see id.* at 149–51, 90 S.Ct. 1598. The only other cases cited by Plaintiffs—all without discussion—concern issues not presented here nor rele-

vant to whether Plaintiffs adequately pleaded state action by the Gutman Defendants. *See Soldal v. Cook County*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (declining to review lower court's finding of state action and considering only whether the seizure and removal of plaintiffs' trailer home implicated their Fourth Amendment rights); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (considering due process

debtor asserted two due process claims against a corporate creditor pursuant to § 1983. The first count challenged the state statute under which the creditor had obtained a prejudgment attachment of the debtor's property as procedurally defective under the Fourteenth Amendment; the second alleged the debtor was deprived of his property as a result of the creditor's malicious, wanton, willful, oppressive, and unlawful acts. *See* 457 U.S. at 940–42, 102 S.Ct. 2744. As to the second count, the Supreme Court observed that, "[b]y 'unlawful,' [the debtor] apparently meant 'unlawful under state law.' To say this, however, is to say that the conduct of which [the debtor] complained could not be ascribed to any governmental decision; rather, [the creditor was] acting contrary to the relevant policy articulated by the State." *Id.* at 940, 102 S.Ct. 2744. Reasoning that, "[w]hile private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action," the *Lugar* Court held that the debtor "present[ed] a valid cause of action under § 1983 insofar as he challenged the constitutionality of the [state] statute; he did not insofar as he alleged only misuse or abuse of the statute." *Id.* at 941–92, 102 S.Ct. 2744. Contrary to Plaintiffs' suggestion otherwise, *see* Pl. Resp. at 12–13, the Court also expressly clarified that "we do not hold today that 'a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law,'" *Lugar*, 457 U.S. at 939 n.21, 102 S.Ct.

2744. As Plaintiffs here do not challenge the constitutionality of any state statute but instead allege merely private misuse of a state statute, as the plaintiff in *Lugar* did, their claim must fail.

Finally, in the alternative, Plaintiffs assert what they describe as an "importuning" theory. Yet this Court is unaware of—and Plaintiffs do not point to—any court in this Circuit that has recognized such a theory as either a fourth test for state action or an alternative formulation of the joint action test. Plaintiffs' reliance on *Rohman v. New York City Transit Authority*, 215 F.3d 208 (2d Cir. 2000), and *Vlach v. Staiano*, 604 Fed.Appx. 77 (2d Cir. 2015) (summary order), is therefore misplaced. In both of those cases, the defendants were either city- or state-run agencies or their employees and thus state action was not in dispute, so neither court undertook an analysis of it. Instead, the courts focused on the elements of causes of action for malicious prosecution, which is not alleged here, and false arrest. In that context, the *Vlach* court noted that, to hold a private individual liable for false arrest, "a plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff." 604 Fed.Appx. at 78 (internal quotation marks omitted) (quoting *Lowmack v. Eckerd Corp.*, 303 A.D.2d 998, 757 N.Y.S.2d 406, 408 (4th Dep't 2003)). Plaintiffs are correct that allegations of importuning state authorities may be sufficient to plead false arrest, but that only goes to the second element of a § 1983 claim.[6] As described above, Plain-

---

challenge to certain state prejudgment replevin statutes); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (considering due process challenge to certain state prejudgment garnishment procedures).

**6.** Moreover, as the Gutman Defendants argue in their briefs and as discussed in Part III.C below, Plaintiffs also fail adequately to allege the elements of false arrest under state law by the Gutman Defendants, even if they were to succeed in showing state action.

tiffs must still first show state action or action under color of state law, *see, e.g., Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999) (reciting elements of § 1983 claim), which they have failed to do.

## B. Conspiracy

 Similarly, to state a § 1983 conspiracy claim, Plaintiffs must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello,* 292 F.3d at 324–25 (citing *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999)). "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.' " *Id.* at 325 (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiffs' conclusory allegations of conspiracy are insufficient to meet this heightened standard. The Amended Complaint fails to allege any agreement between the Gutman Defendants and any state actor. Plaintiffs concede they "nowhere specifically plead the details of [a] conspiracy beyond the details of [Defendants'] common interaction to unlawfully enforce the *ex parte* [temporary restraining order]." Pl. Resp. at 15 n.7. Although Plaintiffs do not elaborate on this "common interaction," the Court assumes Plaintiffs refer to their allegations that the Willoughby

and/or Gutman Defendants summoned the police to Plaintiffs' apartment to enforce the temporary restraining order. *See* Am. Compl. ¶¶ 25, 29. Absent additional details, however, the Amended Complaint provides no factual basis to suggest an agreement between the Gutman Defendants and any state actor to act in concert to inflict a constitutional injury.

Because Plaintiffs' factual allegations are insufficient to support either state action or a conspiracy, the § 1983 claims asserted in Count One against the Gutman Defendants must be dismissed.[7]

## II. Supplemental Jurisdiction

 The Gutman Defendants next argue that, if this Court dismisses Plaintiffs' sole federal claim against them, it should also decline to exercise supplemental jurisdiction over the remaining state law claims against them. This the Court cannot do.

 "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.' " *Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004)). "Where section 1367(a) is

---

7. In their brief, Plaintiffs appear to seek leave to amend their Complaint a second time if this Court dismisses their § 1983 claim against the Gutman Defendants. This is not an appropriate motion to amend. Plaintiffs may hereafter move to do so by following the procedures outlined by Federal Rule of Civil Pro-

cedure 15(a)(2) and this Court's Individual Rules, at which time the Court will consider any proposed amendment. *Cf. In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 220 (2d Cir. 2006) ("[W]here amendment would be futile, denial of leave to amend is proper.").

satisfied, 'the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c).'" *Id.* (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Accordingly, district courts may decline to exercise supplemental jurisdiction over a claim only if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Because Plaintiffs' state and federal claims here clearly derive from a common nucleus of operative facts—the landlord-tenant dispute and resulting entry into Plaintiffs' apartment—this Court may not decline supplemental jurisdiction unless the state law claims satisfy one of the categories above. In their briefs, the Gutman Defendants point only to subsection (c)(3), which provides that a district court may so decline where it has dismissed all claims over which it had original jurisdiction. This argument fails, however, for it does not take into account the other Defendants who have not sought to dismiss Plaintiffs' § 1983 claim. *See DeFazio v. Wallis*, 500 F.Supp.2d 197, 210 (E.D.N.Y. 2007) (Spatt, J.) (declining to dismiss state law claims against moving defendants where court retained original jurisdiction over federal causes of action against non-moving defendants). Specifically, that claim is also asserted, and remains pending, against the City of New York, the NYPD, several NYPD officers, and the Willoughby Defendants, as none of them

has made a motion to dismiss it. As such, this Court has not dismissed all claims over which it has original jurisdiction. Because none of the other § 1367(c) circumstances is present either, there is no basis to decline supplemental jurisdiction.

### III. State Law Claims

 Turning to the merits, however, the Court finds that several of Plaintiffs' state law claims must nevertheless be dismissed. Relevant here, in order to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). The purpose of this rule is to "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a claim does not comply with these requirements, the Court has the power, *sua sponte*, to dismiss it. *See id.*

#### A. Negligence

 In Count Two, Plaintiffs allege negligence by some or all of the Defendants. To state a cause of action under a negligence theory, "a plaintiff must show [1] that the defendant had a duty of care to act reasonably to protect against foreseeable risks, [2] that the defendant breached that duty of care, and [3] that plaintiff's injuries were the proximate cause of the breach." *Levine v. Sears Roebuck & Co.*, 200 F.Supp.2d 180, 186 (E.D.N.Y. 2002) (Glasser, J.).

 Plaintiffs' negligence claim consists primarily of a single run-on sentence that spans nearly two full pages of their Amended Complaint but is devoid of factual detail and is, frankly, incomprehensible. *See* Am. Compl. ¶ 47. Specifically, it does not clearly indicate which of the numerous

Defendants in this action were allegedly negligent, whether they owed any duty to the Plaintiffs, or which of their actions constituted a breach. These inadequacies are particularly striking where, as here, Plaintiffs are represented by counsel and have already amended their Complaint. Because Count Two neither complies with the requirements of Rule 8, nor gives Defendants fair notice of the claim asserted, nor states a claim for negligence, it is dismissed as to all Defendants.

## B. Discrimination

In Counts Three and Four, Plaintiffs allege "unlawful discriminatory practices," in violation of the NYHRL (Count Three) and NYCHRL (Count Four), by some or all of the Defendants. These claims are similarly vague, conclusory, and insufficiently pleaded. In support of each, the Amended Complaint alleges only that "[t]he actions of defendants, complained of herein amounted to unlawful discriminatory practices against the plaintiff." Am. Compl. ¶¶ 55, 62. As a preliminary matter, Plaintiffs fail to indicate which provisions of the NYHRL and/or NYCHRL they assert claims under, or which Defendants they assert claims against. Yet both statutes provide numerous different causes of action for different types of discrimination by different actors, all of which necessarily have different pleading requirements. Without additional detail, it is impossible to divine whether Plaintiffs are asserting claims for discriminatory practices in, for example, public accommodations, publicly-assisted housing, or private housing—or something else entirely. Similarly, it is impossible to tell against which of the Defendants any such claims are asserted—or whether the Defendants are even subject to suit under the statutes. Counts Three and Four, therefore, cannot be said to "give the adverse party fair notice of the claim asserted so as to enable him to an-

swer and prepare for trial." *Salahuddin*, 861 F.2d at 42. More critically, however, the Amended Complaint also fails to allege facts indicating that Plaintiffs were a member of . *any* protected class—a required element of *all* discrimination claims under either the NYHRL or the NYCHRL—and the Court cannot speculate as to whether they are or might have been. Indeed, Plaintiffs themselves readily admit that their "detailed pleadings nowhere ever makes mention of any race based kind of discriminatory animus," Pl. Resp. at 11, and the Amended Complaint does not articulate any other basis for discrimination, such as age, national origin, or religion. Accordingly, Plaintiffs' claims under the NYHRL and NYCHRL must be dismissed as to all Defendants for failure to state a claim or give fair notice of the claim asserted.

## C. False Arrest

 In Count Six, Plaintiffs allege false arrest in violation of New York law by some or all of the Defendants. As discussed in Part I.A above, "[a] section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84, 87–88 (2d Cir. 2007) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *cf. Kass v. City of New York*, 864 F.3d 200, 213–14 (2d Cir. 2017) (dismissing state law false arrest claim against police officer defendants where officers had been found immune from suit as a matter of law with respect to federal false arrest claim based on same facts). To state a claim for false arrest under New York law,

a plaintiff must show: (1) that the defendant *intended* to confine the plaintiff, (2) that the plaintiff was aware of the confinement, (3) that the plaintiff did not consent to the confinement, and (4) that the confinement was not otherwise privi-

leged. To prove intent, the defendant must have either: (1) confined or intended to confine plaintiffs, or (2) affirmatively procured or instigated the plaintiff's arrest.

*King v. Crossland Sav. Bank*, 111 F.3d 251, 256 (2d Cir. 1997) (citations omitted); *see also Weyant*, 101 F.3d at 852 (reciting similar elements).

▮▮ "To hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees did more than merely provide information to the police. The mere identification of a potential culprit does not give rise to liability." *King*, 111 F.3d at 257 (citations omitted). Instead, "[l]iability may attach only when the defendant has 'affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition.'" *Vlach*, 604 Fed.Appx. at 78 (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 13–14 (2d Cir. 1998)). However, "[w]hen police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment—even if the information provided is later found to be erroneous." *King*, 111 F.3d at 257.

▮▮ Here, as discussed above, the Amended Complaint alleges at most that the Gutman and/or Willoughby Defendants summoned the police to Plaintiffs' apartment and, perhaps, provided them with a copy of the allegedly erroneous temporary restraining order. *See* Am. Compl. ¶¶ 25–26, 29. Without more, however, this is insufficient to state a claim for false arrest against the Gutman Defendants. Critically, Plaintiffs fail to plead any facts permitting the inference that either (1) the Gutman Defendants intended to arrest them, provided any type of advice or encouragement

to the police, or otherwise displayed undue zeal, or (2) the police were not acting independently and of their own volition when they asserted they were in possession of a warrant, displayed a copy of the order to show cause, entered Plaintiffs' apartment, and unholstered their firearms. Thus, even if the Gutman Defendants provided false or erroneous information to the police, and even if for an improper purpose, the false arrest claim against them cannot stand.

### D. Attorney Misconduct

▮▮ In Count Nine, Plaintiffs allege attorney misconduct by the Gutman Defendants. Section 487 of the New York Judiciary Law provides that an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party ... [i]s guilty of a misdemeanor, and ... he forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud. Law § 487. "Section 487 thus permits a civil action to be maintained by any party who is injured by an attorney's intentional deceit or collusion in New York on a court or on any party to litigation, and it provides for treble damages." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008). However, "clients may not be held derivatively liable under the statute for the misconduct of their counsel." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F.Supp.3d 363, 376 (S.D.N.Y. 2014) (Freeman, M.J.).

▮▮ With respect to pleading such a claim, "[w]hile some courts have cited a requirement that the plaintiff show a 'chronic and extreme pattern' of legal delinquency by the defendant, the statute itself supports liability for a 'single intentionally deceitful or collusive act,' if sufficiently egregious." *Sabatini Frozen Foods, LLC v. Weinberg, Gross & Pergament,*

*LLP*, 14–CV–2111, 2015 WL 5657374, at \*4 (E.D.N.Y. Sept. 23, 2015) (Irizarry, J.) (quoting *Amalfitano*, 533 F.3d at 123–24); *accord Trepel v. Dippold*, 04–CV–8310, 2005 WL 1107010, at \*4 (S.D.N.Y. May 9, 2005) (Cote, J.) ("A single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability."); *cf. Ray v. Watnick*, 182 F.Supp.3d 23, 30 (S.D.N.Y. 2016) (Rakoff, J.) ("*Amalfitano* does not erase the requirement—elaborated in numerous New York state cases—that a deceitful statement actionable under this statute be 'extreme' or 'egregious.' "). Additionally, "[i]n all cases, the plaintiff must plead and establish actual damages caused by the deceit or collusion." *Sabatini Frozen Foods*, 2015 WL 5657374, at \*4 (citing *Amalfitano v. Rosenberg*, 428 F.Supp.2d 196, 207 (S.D.N.Y. 2006)).

▇▇▇ In support of their claim, Plaintiffs allege the Gutman Defendants were "less than truthful and nefarious in accomplishing their own end to the prejudice of the plaintiffs," "purposely failed to comply with the provisions of" section 6301 of the New York Civil Practice Law and Rules ("CPLR"), and "failed to disclose" certain information to the Housing Court judge, including that the proposed order they presented "was not in compliance with the specifically detailed requirements of CPLR § 6301." Am. Comp. ¶¶ 92–93. Without more, however, these allegations are insufficient to show, or support an inference of, intentional deceit. Indeed, "not all unethical or sanctionable conduct necessarily violates § 487," *Amalfitano*, 428 F.Supp.2d at 208, and "negligence is not sufficient to state a claim for violation of Section 487," *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F.Supp.3d 160, 167 (S.D.N.Y. 2015) (Rakoff, J.). *See also O'Callaghan v. Sifre*, 537 F.Supp.2d 594, 596 (S.D.N.Y. 2008) (Marrero, J.) ("[A]n action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487."). Moreover, Plaintiffs fail to plead or establish any actual damages caused by the Gutman Defendants' alleged deceit, another required element of their claim. Accordingly, Plaintiffs' attorney misconduct claim must be dismissed.[8]

### E. Remaining Claims

Finally, Plaintiffs also bring claims for loss of services (Counts Seven and Eight) against the Gutman Defendants. Without a primary tort claim to support them, however, these derivative claims must be dismissed as to the Gutman Defendants.[9] *See,*

---

8. Even if Plaintiffs' allegations were sufficient, there is some doubt as to whether their attorney misconduct claim is properly before this Court, as plaintiffs are generally "required to bring any claims based on alleged violation of New York Judiciary Law § 487 in the ... Action [in which the violation allegedly occurred], not in a separate proceeding." *In re Swift*, 94–10285, 2016 WL 355515, at \*6 (Bankr. E.D.N.Y. Jan. 28, 2016) (Craig, B.J.); *accord Seldon v. Bernstein*, 503 Fed.Appx. 32 (2d Cir. 2012) (summary order) (affirming *sua sponte* dismissal of § 487 claim on that ground that plaintiff was required to raise the alleged deceit giving rise to that claim during the pendency of the proceeding in which it occurred); *Chibcha Rest., Inc. v. David A.*

*Kaminsky & Assocs., P.C.*, 102 A.D.3d 544, 958 N.Y.S.2d 135, 137 (1st Dep't 2013) ("Plaintiffs' allegations stem from defendants' alleged misconduct in connection with a ... dispute in [a different] Court. Accordingly, 'plaintiff's remedy lies exclusively in that lawsuit itself, i.e., by moving pursuant to CPLR 5015 to vacate the civil judgment due to its fraudulent procurement, not a second plenary action collaterally attacking the judgment in the original action.' " (quoting *Yalkowsky v. Century Apartments Assocs.*, 215 A.D.2d 214, 626 N.Y.S.2d 181 (1st Dep't 1995))).

9. Although the Amended Complaint does include an additional claim for assault (Count

*e.g.*, *Gastwirth v. Rosenberg*, 117 A.D.2d 706, 499 N.Y.S.2d 95, 97 (2d Dep't 1986) (dismissing husband's derivative claim where wife failed to state a primary cause of action).

## CONCLUSION

For the foregoing reasons, the Gutman Defendants' motion for judgment on the pleadings is GRANTED. Counts One (§ 1983), Six (False Arrest), Seven (Loss of Services), Eight (Loss of Services), and Nine (Attorney Misconduct) are dismissed as to the Gutman Defendants; and Counts Two (Negligence), Three (NYHRL), and Four (NYCHRL) are dismissed as to all Defendants. There are no remaining federal or state claims against the Gutman Defendants. The Clerk of Court is directed to terminate the motion pending at ECF No. 42 and to dismiss the following parties from this action: Kenneth P. Mintz; Jesse R. Baker; Neil D. Sonnenfeldt; Moses Ginsberg; Gutman, Mintz, Baker & Sonnenfeldt, LLP; and Gutman, Mintz, Baker & Sonnenfeldt, P.C.

**SO ORDERED.**

Five), it is asserted only against one of the

NYPD officer defendants.